———————————————————————

MARY K.,

                             Plaintiff,

v.                                                      1:18-CV-1271 (ATB)

COMM'R OF SOC. SEC.,

                             Defendant.

———————————————————————

APPEARANCES:                          OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON       STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


ANDREW T. BAXTER, United States Magistrate Judge


## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Mary K. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g).  This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of

28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

(Dkt. Nos. 4, 6).  The parties have each filed briefs (Dkt. Nos. 9 and 10) addressing the administrative record of the proceedings before the Commissioner.  (Dkt. No. 8.)[1]

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1963, making her 49 years old on the alleged onset date and 54 years old on the date of the ALJ's decision.  Plaintiff reported completing the twelfth grade and previously working as a teaching assistant.  At the initial level, Plaintiff alleged disability due to a lumbar spine impairment, arthritis, chronic edema, morbid obesity, hypertension, and depression.

### B.      Procedural History

Plaintiff applied for disability insurance benefits on January 20, 2016, alleging disability beginning May 7, 2013.  Plaintiff's application was initially denied on May 23, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Andrew J. Soltes, Jr., on September 19, 2017, with a vocational expert also appearing.  (T. 31-71.)  On December 5, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act.  (T. 31-71.)  On October 5, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

**C.     The ALJ's Decision**

In his decision (T. 14-26), the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019.  (T. 16.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2013, the alleged onset date.  (*Id*.)  The ALJ further found that Plaintiff had severe impairments including cervical degenerative disc disease, obesity, and edema.  (*Id*.)  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 20.)  Specifically, the ALJ considered Plaintiff's musculoskeletal impairment under listings in section 1.00 and Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p.  (*Id*.)  The ALJ determined that Plaintiff had the RFC to perform light work except she "requires a sit stand option at will, but can remain on task during the sit stand period; and [she] may be off task 5% of the 8 hour workday."  (*Id*.)  Based on testimony provided by a vocational expert, the ALJ determined that Plaintiff was unable to perform any past relevant work, but could perform jobs existing in significant numbers in the national economy.  (T. 24-25.)  The ALJ therefore concluded that Plaintiff was not disabled.  (T. 25-26.)

**D.     Issues in Contention**

In her brief, Plaintiff argues that the ALJ failed to properly apply the treating physician rule regarding the opinions of Plaintiff's primary care physician, Robert P. Reeves, M.D.  (Dkt. No. 9, at 4-8.)  Plaintiff also contends that the ALJ erred in weighing the opinion of single decision maker ("SDM") J. Klaeysen in formulating Plaintiff's RFC.  (*Id*. at 8-10.)  Finally, Plaintiff asserts that the ALJ failed to adequately address the medical source statements related to Plaintiff's mental health impairments, which affected the ALJ's assessment regarding the

severity of these impairments.  (*Id*. at 10-11.)  In response, Defendant argues that the ALJ adequately assessed the severity of Plaintiff's impairments throughout the sequential evaluation and properly evaluated the opinion evidence when determining Plaintiff's RFC.  (Dkt. No. 10, at 6-16.)  For the reasons stated below, the Court concludes that the ALJ erred in his analysis of the opinion evidence and that remand is required.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.** **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. THE ALJ'S ANALYSIS OF THE OPINION EVIDENCE

### A. Applicable Law

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-

CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted

## B. Relevant Medical Evidence

## 1. Treating Source Opinions

In July 2017, Plaintiff's primary care providers, Patricia Ellement, RPAC, and Dr. Reeves, completed a physical RFC assessment stating that Plaintiff was seen annually and had diagnoses of hypertension, anxiety, low back pain, and obesity with a good prognosis. (T. 269,

314.)  They noted that Plaintiff had taken nonsteroidal anti-inflammatories in the past, but she did not recall if the medications had helped, and she denied side effects.  (*Id*.)  PA Ellement and Dr. Reeves opined that Plaintiff's pain or other symptoms were severe enough to interfere with the attention and concentration needed to perform even simple work tasks over 30 percent of the time and that Plaintiff could not walk a city block without rest or severe pain.  (*Id*.)  They concluded that she could sit for 20 minutes at a time for a total of less than two hours in an eight-hour workday, stand for five minutes at a time, and stand/walk less than two hours total during a workday.  (T. 270, 315.)  Plaintiff needed to walk around every 15 minutes for two to three minutes, required a job permitting shifting positions at will, and needed unscheduled breaks every 15 to 30 minutes for two to three minutes to either walk or recline in a recliner chair.  (*Id.*) She could rarely lift up to ten pounds and never lift over ten pounds, occasionally look down, rarely turn her head to the right or left, occasionally look up and hold her head in a static position, occasionally twist and stoop with sitting, never crouch/squat or climb ladders, rarely climb stairs, use her right hand 25 percent of the time, use her right fingers 10 percent of the time, use her right arm for reaching 25 percent of the time, and use her left upper extremity 75 percent of the time.  (T. 270-71, 315-16.)  PA Ellement and Dr. Reeves opined that Plaintiff would be absent more than four days per month, she was not capable of sustaining full-time work, and her limitations began in May 2013.  (T. 271, 316.)

The ALJ found that this treating source opinion was entitled to minimal weight because (a) the providers merely completed a checklist form, so it was unclear how they reached their conclusions, and it appeared "they simply circled the most limiting choices on this form, indicating [Plaintiff] had limitations that would increase the likelihood of [her] obtaining benefits";  (b) the assessment stated that Plaintiff suffered from such chronic pain as to prevent

her from being able to sit, stand, or walk for more than two hours in an eight-hour work period, indicating that she was essentially "bed bound" because of her impairments; and (c) this opinion was without substantial support from the other evidence of record, which suggested essentially normal physical examinations. (T. 23-24.) The ALJ also noted that PA Ellement and Dr. Reeves gave no examples of objective findings, documented symptoms, or other medical evidence to support their conclusions; and it appeared that they relied solely on Plaintiff's subjective statements of self-imposed limitations as a basis for the opinion. (*Id.*) The ALJ further found that this assessment was inconsistent with the doctor's own treatment notes, which showed essentially normal physical examination findings, and with Plaintiff's own report of her daily activities.[2] (T. 24.)

In a September 2017 mental RFC questionnaire, PA Ellement and Dr. Reeves stated that Plaintiff was seen biannually and had a diagnosis of anxiety, which was treated with Fluoxetine, with no side effects. (T. 317.) They found that Plaintiff was limited, but satisfactory, in her ability to remember work-like procedures; maintain attention for two hour segments; maintain

---

[2] The ALJ noted Plaintiff's ability to drive daily, provide care for her disabled children, prepare meals, wash dishes, manage her personal care and medication needs, shop in stores, launder clothing, manage finances, go to the movies, attend school events, and maintain part-time employment as a care provider to a disabled teenager). (T. 17-18.) Plaintiff testified that she struggled with many of these activities and often required help from her family. (T. 40-41, 50-54, 56-58, 59.) She stated that she works part-time caring for a disabled child of a friend "because I need to pay to feed my kids. (T. 40.) *See, e.g., Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'when a disabled person gamely chooses to endure pain in order to pursue important goals,'" such as attending church, driving, and occasionally going shopping, "'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" (*quoting Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989); *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ's reliance on plaintiff's daily activities to discount a treating physician's opinion unsupported where "the ALJ did not explain how the performance of these limited activities of daily living translates into the ability to perform substantial gainful work at all exertional levels in a typical competitive workplace environment.")

regular attendance and be punctual within customary, normally strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember and carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; travel in unfamiliar places; and use public transportation. (T. 319-20.) PA Ellement and Dr. Reeves further concluded that Plaintiff's mental impairments or treatment would never cause her to be absent from work. (T. 321.) The ALJ's decision does not explicitly weigh this treating source opinion, but the ALJ cited it in finding Plaintiff's mental impairments did not cause more than minimal limitations and were, therefore, non-severe. (T. 17.)

### 2. Consultative Opinions

In April 2016, consultative examiner Thomas Osika, Ph.D., observed that Plaintiff had intact recent and remote memory and impaired attention. (T. 258.) He diagnosed recurrent moderate-to-severe major depressive disorder, obesity, and back problems. (*Id*.) Dr. Osika noted that Plaintiff presented with a history of significant depressive symptoms and anxiety. He opined that she would have mild-to-moderate difficulty with simple tasks and severe difficulty with complex tasks. The doctor had a "moderate level of concern" about Plaintiff's ability to consistently interact with people in the workplace. (T. 259.)

In April 2016, as part of the initial determination, non-examining state Agency consultant J. Ochoa, Ph.D., opined that Plaintiff's affective and anxiety disorders were severe. (T. 75.) Dr. Ochoa concluded that Plaintiff had mild restriction of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (T. 76.) Dr. Ochoa further stated that the data supported the presence of a severe psychiatric impairment that resulted in significant functional limitations. Nevertheless, Plaintiff retained the mental RFC to be able to understand and remember simple and detailed instructions and procedures, maintain adequate attention to complete ordinary work tasks on an ongoing basis and independently sustain a routine over time, and interact with others in an appropriate manner to meet work needs. She had some trouble coping with stress, which might impact her capacity to adapt to changes, but she retained the capacity to deal with minor changes in an ordinary work setting. (T. 79-81, 261.)

In April 2016, Plaintiff reported to consultative examiner Kenneth Stein, M.D., that she was able to perform all of her activities of daily living and provided child care for a friend. (T. 264.) Dr. Stein observed that Plaintiff was obese, but was able to get on and off the exam table without any difficulties. (*Id*.) She had no edema, her peripheral pulses were 1+ bilaterally symmetrical, and she was capable of 90 degrees of flexion and extension in the lumbar spine and 25 degrees of lateral movement without complaints of pain. There was no palpable tenderness or spasm in Plaintiff's paralumbar musculature over the sacroiliac joint, her straight leg raise test was negative both sitting and supine, and she was able to toe walk and heel walk without any difficulties. (*Id*.) Plaintiff also had intact sensation and normal gait and posture, and her deep tendon reflexes were 1+ bilaterally symmetrical. (*Id*.) An x-ray of the lumbar spine was normal.

(T. 265-66.)  Dr. Stein did not offer a function-by-function assessment, but noted that Plaintiff was an obese female with intermittent low back pain when she stood for any longer than five minutes, and that she also had a history of hypertension and depression.  (T. 265.)  The ALJ concluded that Dr. Stein's examination report supported an RFC for Plaintiff consistent with a wide range of light exertional work activities.  (T. 22.)

In May 2016, as part of the initial determination, SDM Klaeysen stated that Plaintiff had the RFC to perform a range of medium work.  (T. 77-79, 82-83.)  The ALJ identified Mr. Klaeysen as an "S.D.M." and "disability analyst in the field office employed by the State Disability Determination Services."  (T. 23, 72-83.)  The ALJ cited SDM Klaeysen's assessment for medium exertional work and noted:  "[a]lthough this analyst has based the assessments on program knowledge and has supported the opinions with a detailed explanation, this analyst did not have the opportunity to interview the claimant."  (T. 23.)  The ALJ then found that a limitation to light exertional work activities better accommodated Plaintiff's physical impairments and therefore afforded this opinion only partial weight.  (*Id*.)

## C.  Analysis

### 1.  The ALJ's Consideration of SDM Klaeysen's Opinion in Finding that Plaintiff Could Perform Light Work

Plaintiff argues that the ALJ's weighing of SDM Klaeysen's opinion was error because it is not from an acceptable medical source and denies Plaintiff a de novo review of her claim.  (Dkt. No. 9, at 8-9.)  The Court agrees and finds that the error requires remand, given the absence of other medical opinion evidence supporting the ALJ's RFC findings.

Under 20 C.F.R. §404.1567(b), light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

> when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, noting that "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. *Id*. "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require the use of arms and hands to grasp and to hold and turn objects[.]" *Id*.

"ALJs have been instructed by the Social Security Administration that the opinions of [Single Decision Maker]s 'should not be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a [Single Decision Maker]'s opinion is an error." *Robles v. Comm'r of Soc. Sec.*, 15-CV-1359 (GTS), 2016 WL 7048709, at *6 (N.D.N.Y., Dec. 5, 2016) (quoting *Martin v. Astrue*, 10-CV-1113 (TJM), 2012 WL 4107818, at *15 (N.D.N.Y., Sept. 19, 2012)); *see also Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014) ("Because 'a single decision maker [] is not a medical professional[,] [] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.'") (quoting *Sears v. Astrue*, 11-CV-0138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012)).

It may be harmless error for an ALJ to afford minimal weight to an SDM's assessment where the ALJ adopts greater restrictions than indicated by that source, the ALJ's conclusions are supported by the medical record, and it is clear the ALJ would have reached the same

conclusion even if he had assigned no evidentiary weight to an SDM's assessment. *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012). However, such is not the case here.

The ALJ afforded minimal weight to the only medical opinion of record specifying Plaintiff's functional limitations--that of PA Ellement and Dr. Reeves, which "suggested Plaintiff could perform less than the RFC." (T. 23-24, 269-71, 314-16.)[3] The ALJ stated that Dr. Stein's examination report supported the finding that Plaintiff retained the capacity for a wide range of light exertional work activities as listed in the RFC, but that consultative opinion did not offer a function-by-function assessment. (T. 22.) It is not clear whether the ALJ would have found that Plaintiff could perform the specific requirements of light work without having afforded partial evidentiary weight to SDM Klaeysen's assessment that Plaintiff retained the physical RFC for medium exertional work activities. (T. 23, 77-79, 82-83.) It was error for the ALJ to afford even partial evidentiary weight to an assessment from the SDM, and that error was not harmless given the absence of acceptable medical opinion evidence supporting the RFC determination. *See, e.g., Ridley v. Comm'r of Soc. Sec.*, 16-CV-1353 (WBC), 2018 WL 799160, at *6 (N.D.N.Y. Feb. 8, 2018) (there is no medical opinion evidence clearly supporting the ALJ's conclusions in the RFC assessment and it is not clear whether the ALJ would have found an ability to perform light work without consideration of the SDM's opinion) (citing *Kociuba v. Comm'r of Soc. Sec.*, 16-CV-0064 (GTS), 2017 WL 2210511, at *7 (N.D.N.Y. May 19, 2017) (there is no opinion evidence that clearly supports the ALJ's conclusions in the RFC assessment and it is not clear whether the

---

[3] In light of the Court's finding that the ALJ's partial reliance on the SDM's opinion warrants remand, it is not necessary to address the other issues relating to the ALJ's assessment of the medical source statement of Dr. Reeves and Patricia Ellement, RPAC regarding Plaintiff's physical limitations. However, as suggested above (at note 2) and in Plaintiff's brief (Dkt. No. 9 at 6-8), it may be advisable for the Commissioner on remand to further explain any reliance on Plaintiff's activities of daily living and to address, more explicitly, the factors relating to analysis of treating physician opinions.

ALJ would have found an ability to perform a range of medium work without having "accounted" for the SDM's opinion)); *Medick v. Colvin*, 5:16-CV-0341, 2017 WL 886944, at *15 (N.D.N.Y. Mar. 6, 2017) (although the ALJ's RFC contained limitations that differed from the assessment of the Single Decision Maker, "it was not clear that the ALJ assigned no medical weight to the SDM's opinion because the only other medical opinions in the record that provided an RFC [ ] suggested far more significant restrictions.")

In sum, the Court finds the ALJ's erred in his analysis of the opinion evidence in determining Plaintiff's physical RFC. The error is not harmless, and remand is required.

### 2. The ALJ's Consideration of the Mental RFC Opinions

The ALJ found, based on the medical record, that Plaintiff's anxiety and depression were "stable with psychopharmacological management provided by the claimant's primary care provider." (T. 17, 225-56, 275-313.) The ALJ also noted: Plaintiff "specifically testified at the hearing and reported to her primary care provider that she does not believe her mental health symptoms interfere with her ability to perform work activity." (T. 17, 275.) The ALJ cited PA Ellement's assessment that Plaintiff did not have any significant mental limitations. (T. 17, 317-21.) The ALJ therefore found: Plaintiff's "medically determinable impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (T. 17.)

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, 5:09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) Report-Recommendation *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); see also 20 C.F.R. §

404.1521(a). An ALJ should make a finding of "'not severe' . . . if the medical evidence

establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an

individual's ability to work.'" *Rosario v. Apfel*, 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y.

Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)).

When there are multiple impairments, and the ALJ finds some, but not all of them severe, an

error in the severity analysis at step two may be harmless because the ALJ continued with the

sequential analysis and did not deny the claim based on the lack of a severe impairment alone.

*Tryon v. Astrue*, 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v.*

*Commissioner of Soc. Sec.*, 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).

Plaintiff argues that the ALJ failed to properly consider the medical source statements

regarding Plaintiff's mental health conditions. (Dkt. No. 9, at 10-11.) Specifically, Plaintiff

contends that the ALJ failed to recognize that Dr. Ochoa's opinion was rendered by an

acceptable medical source and instead believed it was rendered by a single decision maker,

repeatedly referring to the source as an "analyst" and as "Mr." rather than "Dr." (*Id.* at 10.) The

Court finds that the ALJ did err in his consideration of the medical opinion evidence relating to

Plaintiff's mental health limitations.

In making his findings at Step Two, the ALJ considering the assessment of "J. Ochoa, a

disability analyst in the field office employed by the State Disability Determination Services

(DDS)," who opined that Plaintiff's mental impairments were "severe within the meaning of the

regulations and result in moderate difficulties in maintaining concentration, persistence or

pace[.]" (T. 19, 72-83.) The ALJ stated "[a]lthough this analyst has based the assessment on

program knowledge, it is not supported [by] a detailed explanation simply noting that 'pain'

impacts 'sustained concentration and persistence.'" (T. 19, 77.)

16

The ALJ also considered Dr. Osika's consultative opinion that Plaintiff "suffers from moderate to severe depression that would cause mild to moderate difficulty with simple tasks and severe difficulty with complex tasks as well as a moderate level difficulty in her ability to consistently interact with people in the workplace." (T. 19, 257-62.) The ALJ indicated that Dr. Osika "offered this opinion despite reporting an essentially normal mental status exam." (T. 19.) The ALJ then found: "both *Mr.* Ochoa and Dr. Osika have relied too heavily on the subjective allegations of the claimant during this examination because the objective medical record and the claimant's own testimony at the hearing fail to establish more than mild limitations in mental functioning on a longitudinal basis." (*Id.* (emphasis added).) The ALJ therefore afforded little weight to these assessments regarding the severity of Plaintiff's mental impairments. (*Id.*)

The ALJ failed to acknowledge Dr. Ochoa's qualifications as a specialist and apparently equated his opinion with than of a single decision maker or "disability analyst." (T. 19, 23.) Although the ALJ referenced Ochoa's "program knowledge" (as he did with SDM Klaeysen), the ALJ did not properly considered the severity of Plaintiff's mental impairments in light of Dr. Ochoa's professional credentials or the actual contents of his assessment. (T. 19.)

For example, the ALJ stated that Ochoa's assessment of a severe mental impairment was supported only by his observation that Plaintiff's "'pain' impact[ed] 'sustained concentration and persistence.'" (T. 19, 77.) The ALJ found that "[t]his reference to physical symptoms is insufficient to establish a severe mental impairment." (T. 19.) However, it is not clear that the part of the Disability Determination Explanation the ALJ cites was authored by Dr. Ochoa, in that it appears after the doctor's electronic signature. (T. 76, 77.) Moreover, even assuming that Dr. Ochoa was the author, the cited portion of the report merely lists "Pain" and "Sustained concentration and persistence limitations" under the heading "List the claimant's symptoms."

Contrary to the ALJ's interpretation, Dr. Ochoa did not state or even suggest that Plaintiff's pain was the sole cause of her mental health symptoms.

The ALJ apparently missed Dr. Ochoa's additional explanation for his mental RFC findings, which appear later in the report.  (T. 81.)  In discussing Plaintiff's claims of depression, Dr. Ochoa noted that Plaintiff reported sexual abuse during childhood and, despite some improvement in her symptoms with medication, she had trouble with sleep, energy levels and concentration.  (*Id*.)  Dr. Ochoa stated that data supported the presence of a severe psychiatric impairment resulting in significant functional limitations, which he specified.  (T. 79-81.)

Defendant argues that remand "is not warranted based on the ALJ's misidentification of Dr. Ochoa or his assessment of little weight to the opinion" and maintains that "Plaintiff herself did not believe she had mental limitations that precluded her from performing work-related activities."  (*Id*. at 10.)  Defendant contends that an error at Step Two "does not necessitate remand where the record is devoid of evidence that the alleged impairments were severe."  (*Id*. at 10-11, citing *Jones v. Comm'r of Soc. Sec.*, 17-CV-6396, 2018 WL 3829119, at *2-3 (W.D.N.Y. Aug. 13, 2018.)  Defendant maintains that the ALJ made findings past Step Two and considered all of Plaintiff's functional limitations when determining the RFC and finding she was not disabled at Step Five.  (*Id*. at 11.)

The Court concludes that the ALJ's errors in the analysis of the medical opinions regarding Plaintiff's mental health limitations do warrant reconsideration on remand.  In response to questions from her representative at the hearing, Plaintiff testified that the symptoms she experienced from any anxiety or depression were not "really part of the work thing . . ."  (T. 58.)  When asked whether symptoms from anxiety or depression were keeping her out of work, Plaintiff responded "I don't really think so."  (T. 59.)  The ALJ formed a lay opinion based, in

large part, on these two ambiguous and/or conclusory statements by Plaintiff during the hearing, while discounting the opinions of two mental health experts, one of whom interviewed Plaintiff about her psychiatric history at much greater length (T. 257-58), for putting too much weight on Plaintiff's report of subjective symptoms.  The ALJ also assigned greater weight to the opinions of Plaintiff's primary care providers over two mental health specialists, one of whom, Dr. Ochoa, considered at least some records of Plaintiff's primary care doctors in reaching his conclusions. (T. 74.)  As noted, the ALJ apparently did not realize that Dr. Ochoa had a Ph. D. in psychology, and thus was arguably more qualified than Plaintiff's family doctor to opine about mental health symptoms.

There is not, as Defendant argues, a lack of evidence that Plaintiff's mental health impairments were not severe.  Rather, both Dr. Ochoa and Dr. Osika concluded that Plaintiff's mental impairments were severe and caused at least some mental limitations.  (T. 76, 79-81, 259, 261.)  Both psychologists found that Plaintiff had mental health restrictions beyond those included in the ALJ's RFC, which included only a five-percent-time-off-task limitation, which the ALJ likely associated more with Plaintiff's physical pain symptoms than with her mental health issues.  (T. 20.)  As noted, Dr. Osika opined that Plaintiff would have mild to moderate difficulty with simple tasks and severe difficulties with complex tasks.  He expressed moderate concerns about Plaintiff's ability to consistently interact with people in the workplace. (T. 259.) Dr. Ochoa found that Plaintiff had some trouble coping with stress.  (T. 81.)[4]  The ALJ's RFC did **not** limit Plaintiff to a low-stress work environment with only simple, routine tasks, basic work-related decision, or occasional interaction with the public (T. 20), presumably because the

---

[4] The Court is not persuaded by Defendant's contention that Dr. Ochoa's narrative opinion is consistent with the RFC because the RFC includes far fewer mental limitations than those indicated by Dr. Ochoa.  (Dkt. No. 10, at 11, n. 3; T. 20, 76, 79-81, 261.)

VE testified that there were no jobs in the national economy which would accommodate both such a low-stress environment and a sit/stand option (T. 65).

In sum, the Court is not satisfied that the ALJ properly considered the medical opinions relating to Plaintiff's mental impairments and limitations. The ALJ's errors in his analysis of Dr. Ochoa's opinion tainted both his findings that Plaintiff's mental impairments were not severe and his RFC determination. This error, coupled with the ALJ's erroneous consideration of the opinion evidence involving Plaintiff's physical limitations, necessitates remand.

### 3. Nature of Remand

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). On remand, the Commissioner should properly analyze the opinion evidence and the other medical evidence in re-assessing Plaintiff's RFC and her ability to perform competitive work in the national economy. The Commissioner should also assess whether additional medical opinion testimony is necessary.

**WHEREFORE**, based on the findings in the above Decision and Order, it is hereby

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper analysis of the

opinion evidence and other further proceedings, consistent with this Decision and Order.

Dated:  March 4, 2020

Andrew T. Baxter
U.S. Magistrate Judge